DANIEL C. PIERSON *et al.*, appellants, *v.* DAVID ROBB *et al.*, appellees.

*Appeal from Morgan.*

An attaching creditor who pursues an absconding debtor into another county, and there attaches his personal property, and brings it back to the county from whence the debtor absconded, and from whence the attachment issued, gains a lien upon the property thus attached, to the extent of his demand, and is entitled to priority of payment over other attaching creditors, who sue out attachments from the same Court, and have their attachments levied upon the same property, after its return to the county from which it was carried by the debtor. He is also entitled to the like preference over an execution creditor.

Where property of an absconding debtor is pursued and attached in a foreign county, and brought back to the county from which the attachment issued, it cannot be attached there, except subject to the lien of the prior attachment.

THIS cause was heard in the Morgan Circuit Court, at the November term, 1841, before the Hon. Samuel D. Lockwood. The cause was submitted in this Court, upon briefs. The facts in the case are fully stated in the opinion of the Court.

D. A. SMITH, for the appellants:

In the case of Hagan *v.* Lucas, 10 Peters 400, Judge McLean supposes that no such case as an equal lien by virtue of processes

from different jurisdictions, can exist. The case under considera-- tion refutes that supposition. It is true, that after the creation of a lien by virtue of an attachment, or execution, from one jurisdiction, it would be utterly inadmissible, and produce a dangerous conflict of jurisdictions, to allow of the overruling of that lien, by an attach- ment, or execution, from another jurisdiction. The case in hand, however, is not that. It is the case of equality of lien by virtue of attachments from the Circuit Court of Morgan county, and a justice of the peace of that county, levied simultaneously. The rights of the parties being simultaneous in the agreed case, to a jurisdiction that can control the proceedings of both the jurisdic- tions from which the attachments issued. No such alarming con- sequences can result, as might arise in a conflict of jurisdiction, for example, between a State and Federal Court. I suppose that this case is to be decided on the same principles as if the property attached, had been levied on by virtue of executions of equal liens from different jurisdictions, and application was made by an agreed case, by the parties in interest, before a controlling jurisdiction—to distribute the proceeds of the sale—according to their respective rights. It may be said that the deputy sheriff and constable, at the time of the seizure of the property on attachments, ought to have divided it. True; but if they did not, what then? The Court below, (nor can this,) did not know enough of the value of the respective items of property to go through the ministerial office of dividing the property. All that can be done in the premises is, to direct the application of the proceeds. At the time of the seiz- ure of the property in Pike county, I suppose that a lien attached on it in favor of all the attachments that were in the hands of the sheriff, his deputy, and the constable who levied the attachments. If executions were delivered simultaneously in different cases, to the sheriff and his deputy, and the deputy should levy the one in his hands, and have a sale under it of personalty, would it not, in the application of the proceeds of the sale, be as much for the benefit of the execution in the hands of the sheriff, as the one in the hands of his deputy? In questions of this sort, it would be utterly inadmissible to object to the legal identity of a sheriff and his deputy. What constitutes a levy of an attachment or execution? That the officer having the same, should seize personal property while such attachment or execution is operative. It is not the en- dorsement of the levy on the attachment or execution, that makes the levy. That is the most convenient evidence of the levy—but not essential to the validity of a levy. In 17 Johns. 116, it is said, "If a sheriff makes a levy on goods on an execution, and after- wards a second execution comes to his hands, the levy is sufficient for both, and he may sell the goods as well on the second as the first execution."

It may be that a case in Cowen, (I believe it was in the second volume,) which was referred to in the Court below, may be ad-'

duced as authority in this Court. If I do not forget the import of that case, it was to the effect, that executions delivered to the sheriff at the same time, were not to be satisfied in case of deficiency of property *pari passu,* or according to equal fellowship proportions; but the proceeds were to be divided dollar for dollar, until the satisfaction of the smaller executions, and then the surplus was to be applied to the larger. No authority is cited to support the opinion, and it is respectfully submitted, that none can be found, in accordance with sound sense and simple evenhanded justice, to sustain it. Judge McLean, in the case from 10 Peters 400, says, in speaking of executions, their lein, &c., " Where there is no priority on the sale of the goods, the proceeds should be applied in proportion to the sums named in the executions." This rule of decision is consistent with the maxim, "equality is equity," and which, as I understand, applies in all cases of parity of lien, where there is a deficiency of proceeds to satisfy the demands involving the lien.

If the view I have presented of the case, (which I take to be the proper one,) be not sustainable, I presume there can be no doubt about the equality of the rights of the appellants with the rights of Robb, such as they may be, if the twenty-fourth section of "*An Act concerning Attachments,*" be taken into consideration. It seems to be the design of that law, that proceedings in attachment should be put on the same footing of proceedings in bankruptcy, as by the laws of England. This policy, I suppose, was intended to prevent scrambling between attachment creditors, and to promote the principle, that " equality is equity."

WILLIAM THOMAS, for the appellees:

When the attachments were levied in Pike county, the officers making the levy, acting under process issuing from different courts, should have separated the property, and each have taken sufficient to satisfy their respective claims. Campbell *v.* Ruger, 1 Cowen 215.

Where there are several executions issuing from different courts, and in the hands of different officers, the first levy upon personal property has the preference. Wylie *v.* Hyde, 13 Johns. 249.

When property is once taken on execution, it cannot be taken again by another officer acting under a different jurisdiction. Hagan *v.* Lucas, 10 Peters 400–3.

The constable having levied upon the whole property, no other officer had the right to seize upon it, and thereby divest him of his rights.

The rule of distribution, in this case, must conform to the legal rights of the parties, the rule in equity, and that adopted in cases where the Court creates the fund, does not apply, and the parties are entitled to distribution according to their legal rights. Codwise *v.* Gelston, 10 Johns. 530–1; McDermott *v.* Strong, 4 Johns. Ch. R. 691.

It was contended in the Court below, in behalf of the four creditors whose attachments were levied by the constable in Pike county, that he and the sheriff should, at the time of the levy, have divided the property equally, until the lesser claims were satisfied, and the balance should have gone to the satisfaction of the larger claims, according to the decision in Cowen; but the Court required a *pro rata* distribution, to which no exception was taken; yet the counsel for the defendants in error insists, that if there is any error in the decision of the Circuit Court, it is upon this point.

TREAT, Justice, delivered the opinion of the Court:

This was originally a proceeding by *attachment*, in the Morgan Circuit Court, in which Robb was plaintiff, and one Giberson was defendant. Stacy & Rapp, Alexander & King, Nicholas Milburn, Ross & Freeman, William Gilham, John E. Denny, Keener & Chambers, English & Monroe, Jacob Strawn, Joseph Duncan, John Seibs, and the appellants interpleaded, claiming the property attached. The cause was tried by the Court, upon an agreed state of facts, substantially as follows: Giberson, the debtor, absconded from Morgan county, on the night of the 19th of September, 1841, with the intention of departing from the State, taking with him all the property in question, but the corn and oats. Early on the morning of the 20th of September, Robb sued out his attachment from the Circuit Court, and Stacy & Rapp, Alexander & King, Milburn, and Ross & Freeman, severally obtained attachments from a justice of the peace. The deputy sheriff and constable, thereupon, started in pursuit of Giberson, with these attachments, and in the evening of the same day, overtook him in Pike county, and seized and attached all the property in dispute, but the corn and oats. On the same day, the appellants sued out attachments from the Circuit Court, and put them in the hands of the sheriff, but he did not pursue Giberson. Subsequently, English & Monroe, Keener & Chambers, and Denny obtained attachments from a justice of the peace, and Strawn one from the Circuit Court. These attachments, together with those obtained by the appellants, and an execution in favor of Gilham, were, upon the return of the deputy sheriff and constable from Pike county, levied on the property taken by them. All of the attachments and the execution were levied on the corn and oats left by Giberson, in Morgan county. Duncan made his distress warrant, under which his bailiff attached the corn and oats. The plaintiffs in the attachments first issued by the justice of the peace, obtained judgments on their demands, on the 30th of September, on personal service on Giberson. The plaintiffs in the attachments subsequently issued by the justice of the peace, obtained judgments on the 11th of October. At the October term of the Morgan Circuit Court, Seibs recovered judgment against Giberson in an appeal suit. The plaintiffs in the attachments issued from the Circuit Court, were all entitled to judg-

ment at the October term. The parties agreed that the Circuit Court might decide upon their respective rights to the property attached, and that the same should be sold, and the proceeds applied accordingly, subject to an appeal to this Court. The Circuit Court decided that Duncan was entitled to be paid out of the proceeds of the corn and oats, the amount of his rent; that Robb, Stacy & Rapp, Alexander & King, Milburn, and Ross & Freeman were entitled to the proceeds of the property taken, except the corn and oats, until their claims were satisfied, the balance of the proceeds of the whole property to be divided among the other parties. An appeal is taken, and the appellants assign for error, the decision of the Court in giving preference to the claims of Robb, Stacy & Rapp, Alexander & King, Milburn, and Ross & Freeman, over the claims of the appellants.

The twenty-fourth section of the attachment act (1) provides, that where several attaching creditors obtain judgments at the same term of the Court, on attachments issued against the same debtor, and returnable to the same term, the judgments shall be paid *pro rata*, out of the proceeds of the property attached. Under that act, the sheriff or constable in the service of the attachment, as in other process, was confined to the county in which the attachment issued, and if the creditor desired to attach other property of the debtor, in a different county, he could only do so by obtaining an attachment directed to the sheriff of the county in which the property was to be found, as provided by the thirty-second section of the same act. To obviate in some respects this difficulty, the "*Act concerning Attachments*," approved January 31, 1840, (2) was passed, providing that where the defendant shall be in the act of absconding with his goods and effects, it shall be lawful for the officer in whose hands any attachment is placed, to pursue him to any county in the State, and to levy upon and take the goods and chattels of the defendant, and bring them back to the county from whence the attachment issued. Under this law the deputy sheriff and constable pursued Giberson to Pike county, attached his property, and brought it back to Morgan county.

The question now arises, did the plaintiffs in these attachments, by reason of their superior diligence, gain any preference over the appellants, whose attachments were issued subsequently, and not levied on the property in question till after it was brought back to Morgan county. If the property had been originally levied on in Morgan county, there is no doubt but the appellants would be entitled to a *pro rata* division of the proceeds, with the other creditors. We are of the opinion, that the creditors who pursued Giberson into Pike county, gained a complete lien, to the extent of their demands, upon the property there attached. The other attachments were no lien upon the property in Pike county, nor could they be

(1) R. L. 92; Gale's Stat. 71.        (2) Laws of 1839–40, 30.

made a lien upon it, unless in the hands of an officer in that county, and levied by him. When brought back to Morgan county, the property could only be attached subject to the prior lien acquired in Pike county. It is but fair to presume that Giberson was pursued at the instance of the creditors who have been preferred, and not by the mere volition of the officers. The preference given them is but the reward for their superior vigilance. The other creditors, by sleeping upon their rights, while the former were pursuing the debtor, and attaching his property in a distant county, have no good reason to complain of the preference thus given. The judgment of the Circuit Court is, therefore, affirmed with costs.

*Judgment affirmed.*